IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERNEST ADKINS, #189 166, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>SANGEETA DOSHI, )<br>)<br>    Defendant. ) | CIVIL ACTION NO.:  2:12-CV-1023-WHA<br>[WO] |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate incarcerated at the Kilby Correctional Facility in Mt. Meigs, Alabama, alleges Defendant–Dr. Sangeeta Doshi–violated his Eighth Amendment rights by failing to provide appropriate medical care for a broken disc in his back. Plaintiff seeks damages for the treatment provided by Dr. Doshi. *Doc. No. 1.*

Dr. Doshi filed a written report and supporting evidentiary materials addressing Plaintiff's claims for relief. In her written report, Dr. Doshi denies she acted in violation of Plaintiff's constitutional rights. The court granted Plaintiff an opportunity to file a response to Dr. Doshi's report and he has done so. *Doc. Nos. 31, 35, 36.* The court deems it appropriate to treat Dr. Doshi's written report as a motion for summary judgment. *See Doc. No. 22.* This case is now pending on Defendant's dispositive motion.

**I. STANDARD OF REVIEW**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a

matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

Dr. Doshi has met her evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. To survive Defendant's properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*,

2

477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). Where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant

does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff has failed to demonstrate a requisite genuine dispute of material fact against Defendant to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

Plaintiff alleges Dr. Doshi diagnosed him as having a pulled muscle in his lower back instead of a broken disc. The treatment provided Plaintiff comprised being prescribed muscle relaxers and Tylenol. Swelling in Plaintiff's legs and ankles was attributed to arthritis. After waiting four months–from April to July 2011–Plaintiff received an MRI. Dr. Doshi reviewed the results of the MRI and told Plaintiff nothing was wrong. Plaintiff, however, still had trouble walking. In August 2011 Plaintiff was examined by a free world physician–Dr. Timothy Holt–who informed him he had a broken disc in his back. Plaintiff underwent back surgery on August 17, 2011. Following the surgery, Plaintiff complains Dr. Doshi cancelled two of his follow up appointments with Dr. Holt. Although Plaintiff was scheduled to see Dr. Holt in July 2012 to receive shots in his lower spine, the appointment paperwork was hidden in his prison medical file for two months. From July to September 2012 Plaintiff asked Dr. Doshi about getting the shots, but the physician informed Plaintiff they had to find someone qualified to administer them. Plaintiff informed Dr. Doshi that Dr. Holt was supposed to give him the shots. When he filed his complaint in November 2012, Plaintiff complains he still had not received the shots. *Doc. No. 1* at 3-4.

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show those responsible for providing medical

treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1254-55 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Specifically, correctional officials or prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989).

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105; *Mandel*, 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (*citing Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

A correctional official or health care provider may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does

6

not 'respond[] reasonably to the risk'. . ." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc), quoting *Farmer*, 511 U.S. at 844. "Even assuming the existence of a serious risk of harm and legal causation, the [defendant] must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists–and the [defendant] must also 'draw that inference.'" *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003), quoting *Farmer,* 511 U.S. at 837. Thus, in order to survive summary judgment on his claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant[']s deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Dr. Doshi is the medical director at the Kilby Correctional Facility ["Kilby"] and is employed by Corizon, Inc., which holds the medical contract to provide medical care and services to inmates in the custody of the Alabama Department of Corrections. Dr. Doshi is familiar with Plaintiff having examined him and treated him at Kilby regarding his medical needs and concerns. The evidentiary materials filed by Dr. Doshi address the allegations made by Plaintiff. A thorough review of these documents and records demonstrate the affidavits submitted by Dr. Doshi describing the treatment provided to Plaintiff are corroborated by the objective medical records compiled contemporaneously with such treatment. *See Doc. No. 22, Doshi Affidavit, and Plaintiff's Medical Records – Part 1 & 2*.

Plaintiff's medical records reflect that Dr. Doshi ordered an x-ray of Plaintiff's spine in April of 2011 after he made persistent complaints of back pain. The radiologist's report dated April 20, 2011, indicated Plaintiff had no fracture or bony destructive lesion and concluded that he had mild arthritis of the lumbar spine. After Plaintiff complained of hip pain, x-rays of his hip were made on May 4, 2011. The radiologist's report found no fracture or dislocation and

concluded that Plaintiff's left hip was "unremarkable." After Plaintiff complained of continued pain down his right leg, he underwent an MRI, with and without contrast, on June 3, 2011. The radiologist's report noted "[m]ild to moderate multi-level lumbar spondylosis . . . , more pronounced at L4-L5. . . . No MR evidence of occult fracture, bone destructive process, or abnormal enhancement back enhancing lesions are seen. Subsequently, health care staff arranged an appointment for Plaintiff with an outside specialist–Dr. Timothy Holt. Dr. Holt examined Plaintiff on July 28, 2011. His medical notes from the appointment reflect, in part:

> He is a 54 year old gentleman who comes in after he picked up a box from the floor and his back snapped on 4/01/11. He is now complaining of low back pain and right pain.
>
> \*\*\*
>
> Physical examination: Motor testing is 5 over 5. Sensory is intact. Straight leg raise test is positive. Cram's and lasegues's tests are positive on the right. There is no clonus. Babinski is normal. Range of motion is limited.
>
> X-rays: I have reviewed his MRI report. Unfortunately, I do not have the films. The report shows what appears to be a bilateral recessed stenosis at L4-L5, more pronounced on the right with impingement of the right nerve root which [] does not correlate to his symptoms. At L5-S1, he also has a significantly narrowed canal with what appears to be medial stenosis. The neuroforamen are patent. At this time, he understands the risks, benefits and alternatives to treatment. He understands those completely. He wants to have this fixed. We will plan to do a decompression infusion at L4-L5 and will probably need to go ahead and do L5-S1. We will explore L3-L4 at the time of his surgery. Most likely, we will want to extend to that level.
>
> Plan: (1) Decompression and fusion at L4-L5 and probably L5-Sl with exploration of L3-L4 at the time of his surgery.
>
> (2) Follow up after surgery.

*Doc. No. 22, Doshi Affidavit, Plaintiff's Medical Records – Part 2* at 15-18, 57-58.

Plaintiff was approved for surgery on August 3, 2011 and underwent a discectomy/decompression on August 17, 2011. X-rays of Plaintiff's lumbar spine taken on September 28, 2011, showed the vertebral bodies of Plaintiff's spine demonstrated normal height

8

and alignment, the L4-S1 fusion was stabile, there was no fracture or bony lesion, the pedicles were intact, and there was mild degenerative osteophytic spurring. The x-rays indicated Plaintiff had mild osteoarthritis of the lumbar spine. *Doc. No. 22, Doshi Affidavit, Plaintiff's Medical Records – Part 2* at 14.

At a follow up appointment with Dr. Holt on September 29, 2011, Plaintiff informed the physician that during a coughing fit over the weekend he felt a sharp pain in his lower back which radiated to both knees. At the time of the visit he was still experiencing pain radiating to both knees and also complained of lower extremity swelling. Dr. Holt's physical exam of Plaintiff showed that his femoral stretch was positive, his straight leg raise test produced back pain and some leg pain, his Cram's and lasegues's tests were positive, and there was no clonus. Dr. Holt scheduled Plaintiff for another MRI. *Doc. No. 22, Doshi Affidavit, Plaintiff's Medical Records – Part 2* at 44.

Plaintiff's follow-up MRI taken on October 7, 2011, showed now fractures. The radiologist's report reflected:

> Posterior stabilization hardware L4, L5 and Sl.
>
> Degenerative disc disease L3-4 with posterior bulge of the disc and facet hypertrophy producing spinal stenosis and bilateral foraminal encroachment.
>
> Posterior bulge of the disc and facet hypertrophy L4-5 narrowing both foramina without spinal stenosis. There are bilateral laminectomies at L4.
>
> Probable bilateral laminectomies at L5 (metal hardware renders visualization difficult). Facet hypertrophy and posterior bulge of the disc has probably minimally narrowed both foramina but there is no spinal stenosis at L5-S1.

*Doc. No. 22, Doshi Affidavit, Plaintiff's Medical Records – Part 2* at 12-13.

At a follow up appointment with Dr. Holt on July 12, 2012, Plaintiff complained of pain around the SI joints. Dr. Holt reviewed Plaintiff's x-rays and suggested he receive bilateral SI joint injections after which the physician would again conduct a follow up appointment. *Doc. No. 22, Doshi Affidavit, Plaintiff's Medical Records – Part 2 at 22.*

Dr. Doshi maintains that Plaintiff's complaints of back and leg pain were routinely assessed and treated by medical personnel at Kilby's health care unit as well as by free world physicians and specialists. Although Plaintiff was prescribed pain medication, Dr. Doshi states he was repeatedly non-compliant. Following his back surgery Plaintiff continued to be non-compliant with prescribed pain medication despite being counseled against such action.[1] Although he was offered steroids for pain, Plaintiff refused this treatment. Dr. Doshi affirms that Plaintiff's condition was never ignored nor was any medically necessary treatment delayed. *Doc. No. 22, Doshi Affidavit, Plaintiff's Medical Records.*

Although Plaintiff maintains Dr. Doshi failed to provide proper and adequate medical care and treatment for his complaints of back and leg pain, he presents no medical evidence establishing that she disregarded a substantial risk to his health. Plaintiff concedes he received medical care and treatment between April and July of 2011 but complains he did not see Dr. Doshi until July of 2011. He also claims it is "highly questionable" that he had to wait two months to see Dr. Holt after receiving an MRI on June 3, 2011, during which time he remained in severe pain. Plaintiff further complains about a delay of nine months before undergoing a follow up MRI in October 2011 and a delay of seven months before receiving the bilateral SI

---

[1] Plaintiff's medical records reflect that Dr. Doshi submitted a consultation request for bilateral SI joint injections on September 18, 2012. The request form noted that Plaintiff had complained to Dr. Holt about SI joint pain for which the physician advised SI joint injections. Dr. Doshi further noted Plaintiff's non-compliance with taking prescribed pain medication, that he did not desire "med. tx's [treatment]," and was "hoping for another surgery on his back." *Doc. No. 22, Plaintiff's Medical Records –Part 2 at 19, see also Part I* at 49, 59, 60, 61.

joint injections.[2] Regarding Dr. Doshi's assertion he was non-compliant with pain medication, Plaintiff claims his prescribed medication was labeled with the instruction it was to be taken "as needed." Regarding the steroid medication, Plaintiff states he had an adverse reaction to it. *Doc. No. 36.* Despite his assertions, Plaintiff simply provides no evidence that the medical care and treatment rendered regarding the conditions about which he complains, and specifically from Dr. Doshi, was inadequate, detrimental to his health and well-being, or reflective of any disregard by this doctor of a substantial risk of harm to his health and well-being.

This court has conducted a thorough and careful review of all the evidentiary materials submitted by Defendant which shows that the Plaintiff received medical care and treatment for his medical complaints. He does not have a constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel. The law is settled that "[s]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Dr. Doshi's evidence reflects that she with other prison medical personnel monitored, evaluated, and treated Plaintiff regarding his complaints of back and leg pain in accordance with their assessment of his condition. There is no indication in Plaintiff's medical records he was denied any necessary treatment or that he suffered any injury or damage due to a denial or a deficiency in the provision of his medical care. *See Doc. No. 22, Doshi Affidavit, and Plaintiff's Medical Records – Part 1 & 2*

Plaintiff has come forward with no probative evidence which demonstrates that Dr. Doshi disregarded a substantial risk to his health. *See generally Estelle*, 429 U.S. at 104-05 (mere negligence in providing medical care is insufficient to violate the Constitution). Plaintiff's

---

[2] Plaintiff's first MRI was taken on June 3, 2011, and a follow up MRI was performed on October 7, 2011–a period of five months during which time he underwent back surgery.

11

disagreement with the prison medical staff about the course of his medical treatment does not show deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). In addition, whether correctional medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995), quoting *Estelle,* 429 U.S. at 107. Finally, that prison medical personnel and a private physician may differ in their opinions on the appropriate course of treatment for an inmate's medical condition, without more, does not evidence deliberate indifference. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). Plaintiff has presented no evidence which indicates Dr. Doshi knew that her treatment of Plaintiff's complaints of back and leg pain created a substantial risk to his health and that with that knowledge, consciously disregarded such risk.

The court now turns to Plaintiff's claim about delay in treatment. Any claim that specific medical procedures were impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr*., 40 F.3d 1176, 1188-89 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). Here, the court finds that no verifying evidence has been produced establishing any detrimental effect because of Dr. Doshi's actions or that Dr. Doshi disregarded a substantial risk to Plaintiff's health by delaying medical services or medical care for him. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003).
Plaintiff provides nothing more than his unsubstantiated opinions about the quality of the

medical care he received. His opinions are insufficient to create a genuine issue, and his failure to support his claims with medical or scientific evidence is fatal to them. No evidence exists showing that Dr. Doshi demonstrated deliberate indifference towards Plaintiff's medical needs by delaying or withholding necessary medical treatment, or by interfering with his ability to access any such necessary treatment. Plaintiff merely disagrees with the course of treatment he received for his complaints related to his back and leg pain. As explained, however, such disagreements do not provide the framework for a federal deliberate indifference complaint under 42 U.S.C. § 1983. *Hamm*, 774 F.2d at 1575; *Waldrop*, 871 F.2d at 1033. Summary judgment is, therefore, due to be granted in favor of the defendant.

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's motion for summary judgment (*Doc. No. 22*) be GRANTED.

2. Judgment be GRANTED in favor of Defendant and against Plaintiff.

3. This case be dismissed with prejudice.

It is further

ORDERED that **on or before March 2, 2016**, the parties may file an objection to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on

appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 17th day of February, 2016.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE